Sneed, J.,
delivered the opinion of the Court.
The action was brought to recover the amount of a due-bill, payable on demand in gold, and bearing date the 31st December, 1866. The instrument sued on is in the words and figures following :
“ $200.00. Due Wm. T. Wills, or order, two hundred dollars in gold, for value received. This December 31st, 1866, payable on demand.
B. G-. Allison.”
The question made by the pleadings and proof is, whether the plaintiff is entitled to a specific verdict and judgment for gold coin, or its equivalent in legal tender notes, or for so many dollars, the amount of the' note and interest. And in view of the unequal value of current gold coin and the legal tender notes of the currency of the United States, in which last named currency the *387 latter judgment might be discharged by the payment of the number of dollars demanded with interest, the question is one of importance. The plaintiff avers and proves a' demand of payment on the first day of January, 1867, and it is shown in the bill of exceptions that the plaintiff proposed to prove that at the time of said demand, gold coin was worth a premium of thirty per cent. over United States Treasury notes, or National Bank notes. The court excluded the proof as to the relative • value of gold coin and legal tender notes. The plaintiff asked the court to charge the jury, if they found the note was payable in gold, to return their verdict accordingly, and after verdict, the plaintiff asked the court for a judgment in gold coin — all of which was by the court refused. The court thereupon charged the jury, that if they found from the proof that the plaintiff was entitled to recover that he could only recover the face of the note or due-bill in dollars and cents, together with interest from the time of demand of payment thereof; that plaintiff would not be entitled to recover the amount of said note or due-bill in gold coin — nor the premium which gold may have been worth over United States Treasury notes or National Bank notes at the time of demand of payment. The verdict and judgment were for -two hundred dollars, with interest. The plaintiff has appealed in error, and demands a specific enforcement of the contract for a payment in gold coin, or its equivalent in legal tender notes.
*388 We have no reported case adjudicated by our own court upon the effect of the acts of Congress enacted during the late civil war, and known as the legal tender acts, upon contracts of this kind.
The question came before this court in 1867, in the case of Bolton v. Armour, from the Circuit Court of Shelby county. The action was upon a note executed March 7, 1865, and payable in gold or its equivalent, for one hundred and twenty-four dollars and sixty-four cents. The' facts were agreed and submitted to the Judge of the Circuit Court, waiving a trial by jury. The plaintiff insisted that he was entitled to recover the value of the one hundred and twenty-four dollars and sixty-four cents in legal tender currency — estimating the value of the gold at forty per cent, premium, as it was at the time of the maturity of the note — and the defendant insisting that he was only liable for one hundred and twenty-four dollars and sixty-four cents, with interest. The court gave judgment for the defendant, and the plaintiff appealed in error. This case is sometimes referred to as a manuscript opinion. But there was no written opinion in the case, but a mere memorandum of an affirmance of the judgment indorsed upon the record and signed Shackelford, J.: Vide 1 King’s Big., § 1281. We cannot, therefore, have the benefit of the line of argument which brought the court to its conclusion in that case, which we the more regret, as our convictions of the law have led our minds in a different direction.
*389 We believe that the question of the constitutionality of the legal tender acts, in all its bearings, is at this moment pending before the Supreme Court of the United States; but conceding, for the sake of argument, that they are valid enactments, how do they affect the rights of the parties to this litigation? If the contract be against good morals or public policy, or in violation of any public law, the courts cannot enforce it. If it be in neither respect obnoxious, then can a court of justice enforce it in any other way than to- give effect to the intention of the parties, if that intention can be ascertained? This plain principle of law lies at the .foundation of this question. The law is jealous of the inviolability of contracts, and only demands to know what the parties have intended by the terms and conditions thereof. If the parties are sui juris and otherwise capable of contracting— if the contract itself' be fair and lawful, and infringe no rule of public policy, and no canon of good morals, the courts are bound to -its specific enforcement. The meaning of a promise to pay two hundred dollars in gold, is,- to pay' two hundred gold dollars; and subject to the restrictions above stated, the law cannot make the contract other or different in its legal effect from the stipulations agreed upon by the contracting parties. That the intention of the defendant was to pay this debt in ■gold coin, is indisputable. That the plaintiff contracted to receive gold in payment, is alike unquestionable. It is not pretended that the lending of *390 gold by one citizen to another — or the selling of property by one citizen to another to be paid for in gold or silver coin, is either immoral or impolitic. And so far from its being unlawful, it is said by Chief Justice Chase, that the legal tender acts not only do not prohibit, but by strong implication they sanction contracts made since their passage, for payment in gold: Vide Butler v. Horwitz, 7 Wal., 261.
It will be observed that this contract was made on the 31st December, 1866, and after the close of the late civil war, and can in no way stand affected by certain treasury regulations and military orders which were promulgated during the war, which forbade gold contracts among the citizens. These orders and regulations were essentially war measures, and it is claimed that under the laws of war they might be enforced within the military lines of the Federal armies. They were intended to give credit and currency to an enforced circulating medium which was issued and legalized in the midst of arms, and as a military necessity — and having performed their office, they were of no authority at the time of this contract; if, indeed, they could affect the validity of any contract; which we are not called upon in this case to determine.
The rights of these parties, then, depend upon the laws of this State at the time of the contract and the breach thereof, and are to be determined' by those laws in relation to the laws of Congress, enacted under the Constitution of the Union, of *391 which tlie State of Tennessee was then a member. The law is the source of the obligation of contracts, and the extent of the obligation is defined by the law in force at the time the contract is made: Townsend v. Townsend, Peck’s R., 1-21.
We do not propose to consider the constitutionality of the legal tender .laws. In the view we have taken of this ease, that question does not arise. It is enough to say, that while Congress has the exclusive power to coin money and regulate the value thereof — and while there is no specific grant of authority to make gold and silver or anything else a legal tender — yet the power has been exercised during the whole existence of the government in regard to gold and silver coin — and the acquiescence of every department of the general and state governments in the exercise of that power, has impressed it with the sanction of constitutional authority: Vide Metropolitan Bank v. Van Dyck, 27 N. V. R., 426; Martin v. Hunter, 1 Wheat., 421; Briscoe v. Bank of Kentucky, 11 Pet., 527; Story on Cons., § 425. It is certain that the State has no such power, and its citizens must accept the laws and ordinances of the Congress regulating the coinage of the precious metals into money, and fixing the value thereof, and also prescribing what shall be a legal tender in the payment of debts — so long as such laws are consistent with the fundamental law. The sovereignty of the State, it is said, extends to every thing which exists by its own authority, or is introduced by its permission — but not *392 to those means which, are employed by Congress to carry into execution powers conferred on that body by the people of the United States: Weston v. The City of Charleston, 2 Pet. R, 449; Bank of Commerce v. New York, 2 Black, 632.
“Money,” said Sir 'William Blackstone, “is the universal medium or common standard, by comparison with which the value of all merchandise may be ascertained; or it is a sign which represents the value of all commodities,” 1 Bl. Com., 276; Sto. on Con., § 1118. And so it is defined by Lord Ellenborough in 13 East, 20; and by Chancellor Kent in Mann v. Mann, 1 Johns. Ch. R., 236, to be cash; that is gold and silver, or the lawful circulating medium of the country — including banknotes, when they are known and approved of, and used in the market as cash. Before the passage of the late Legal Tender Acts, all verdicts and judgments for money were recoverable at the option of the plaintiff in gold and silver coin, which was the only legal tender: vide Hepburn v. Griswold, 8 Wal., 608. But it was not every gold and silver coin, even of universal credit and circulation that was a legal tender. No foreign coins, either of gold or silver, are now a legal tender; nor have they been so since 1857, when the law making certain foreign coins a legal tender was repealed, vide Act 1857, s. 3, Stat. at Large, vol. 11, 163. But all the gold coins of the United States according to their nominal value — the silver dollars of the coinage of the country, and the silver coin below the denomina *393 tion of the dollar, coined prior to 1854, are a legal tender in payment of any sum whatever. The silver coins below the dollar of the date of 1854, and since, are a legal tender in sums not exceeding five dollars. The three cent silver coins of the date of 1851, 1852 and 1853, are a tender in sums not exceeding thirty cents. It was by an act passed by Congress in 1862, that certain Treasury notes were issued and declared a legal tender in the payment of all debts public and private, except duties on imports and interest on the public debt. ¥e can find nothing in that act which forbids the making of contracts for the payment of gold and silver in coin or bullion; but the act undoubtedly discriminates .in favor of coin over Treasury notes, and makes the depreciation of the latter, to a greater or less decree, inevitable, as long as the period of redemption in coin is indeterminate or uncertain. The most important effect, however, of these legal tender acts, as they bear upon the question now under consideration, is in the fact, that the influx of the paper currency as a legal tender under the impress of governmental authority, has totally abolished gold and silver coin as a circulating medium, while they remain the standard of all values in trade and commerce, as well as in finance. G-old and silver coin can no longer be called a currency in this country, but they are in fact, as they are in law, a commodity to be bought and sold as any other article of traffic that is thrown upon the market.
*394 This being so, by what law is it forbidden, to the citizen to contract for the payment of a debt in gold as well as in dollars — in gold as well as in legal tender notes — in gold as well 'as in cotton or tobacco, or wheat or corn?
The law which makes the Treasury note a legal tender does not declare that gold and silver coin shall no longer be a legal tender. But if we are not to treat a contract for the payment of so many dollars in gold, as a contract for gold of the value of so many dollars, then we must take it that the parties have contracted for the payment of so many gold coins of the value each of one dollar, -which is a recognized legal tender, and we must enforce it accordingly. The proposition that a contract for the payment of gold coin— a legal tender in the payment of all debts — cannot be specifically enforced so as to carry out the intention of the contracting parties, would seem to be an absurdity in the .law. That the Government has created two currencies, and declared that both shall be a legal tender, is no good reason why a contract for the payment of either should not be enforced just as the parties intended it. If parties contract merely for the payment of dollars, then the better currency cannot be exacted, but the defendant may pay dollar for dollar in that kind of legal tender currency which is of least value in the market. But if they contract to pay in either the one or the other, they must be held to it. The measure of the defendant’s . lia *395 bility in such case would be the market value of the gold or the Treasury notes at the time of the breach. He may, it is true, if the plaintiff waives his right to the gold, discharge the verdict in the legal tender currency of the least value in market, but he must make his payment equal to the value of the currency contracted to be paid at the time the' contract was broken.
¥e cannot reconcile the opposite view of this question with the most obvious principles of equity, justice, or honesty. The argument against this view of the question is, that the law has impressed Treasury notes with a legal value equal with that of gold or silver coin of the same denominations, for the purpose of paying individual debts with them, and it cannot permit a discrimination against them in favor of gold and silver coin without allowing its authority to be substantially annulled: 7 Wal., 240.
But the Government has itself discriminated in favor of the gold and silver coin, so as to render the difference in value of the two currencies unavoidable, and their values are governed by the laws of trade and by certain cardinal principles of public economy, which the authority of the Government cannot reach so long as commerce is free.
"We are aware that some respectable authorities in the Northern States have announced views upon the question differing from ours — but some of those opinions were evidently inspired by a disposition to foster and protect the war currency of the Govern *396 ment, without a due regard to the rights of the citizen. And, indeed, in one case the learned Judge who delivered the opinion seemed to doubt its soundness, and gravely announced that he would resolve all doubts in favor of the Government. But it seems to us that whether the parties to a “gold contract” have undertaken in their bargain to deal with gold as an article of merchandise or’ as money, there can be no sound reason why they should not enjoy the full benefit of the contract as both parties understood and intended it. The true rule is thus stated: “to refer the injury inflicted by a breach of contract to the period when the contract was broken; to examine what the injured party would have got if the contract had then been fulfilled, and what he lost by its non-fulfillment:” Per Hare, J., Shoenberger v. Watts, 1 Am. L. Reg., new series 561. This would be estimated in currency, and judgment entered for the amount thus ascertained. A judgment, says the same learned Judge, upon a contract for doubloons would follow the same rule, and be not for doubloons, but for the value which the doubloons would have had, if delivered according to the contract.” Ib. In the case of Bronson v. Rocíes, Chief Justice Chase observes that a contract to pay a certain number of dollars in gold or silver coins is, in legal import, nothing else than an agreement to deliver a certain weight of standard gold, to be ascertained by a count of coins, each of which is certified to contain a definite proportion of that *397 weight. It is not distinguishable, he says, in principle, from a contract to deliver an equal weight of bullion, of equal fineness. It is distinguishable, in circumstance only, by the fact that the sufficiency of the amount to be tendered in payment must be ascertained in the case of the bullion by assay and the scales, while in the case of coin it may be ascertained by count: 7 Wal., 250. In that case it was held that when obligations made payable in coin are sued upon, judgment may be entered for coined dollars and parts of dollars. In the case of Butler v. Horwitz, 7 Wal., 258, it is held that a contract to pay a certain sum in gold and silver coin is in substance and legal effect a contract to deliver a certain weight of gold and silver of a certain fineness, to be ascertained by count. 2. "Whether the contract be for the delivery or payment of coin, or bullion, or other property, damages for non-performance must be assessed in lawful money; that is to say, in money declared to be legal tender in payment by a law made in pursuance of the constitution of the United States. 3. There are at this time two descriptions of lawful money in use under Acts of Congress, in either of which, assuming these acts in respect to legal tender to be constitutional, damages for non-performance of contracts, whether made before or since the passage of these acts, may be assessed in the absence of any different understanding or agreement between the parties. 4. "Where the intent of the parties as to the medium of payment is clearly expressed in *398 the contract, damages for the breach of it, whether made before or since the enactment of these laws, may be properly assessed so as to give effect to that intent. 5. When, therefore, it appears to be the clear intent of a contract that payment or satisfaction shall be made in gold and silver, damages should be assessed in coin, and judgment rendered accordingly: Vid. 7 Wal., 258. The views embodied in these five propositions of the opinion of Chief Justice Chase seems to us to be founded on the true principles by which contracts of this character are governed. We think they are just. We think they rest upon the sound' doctrine of the law that in the enforcement of contracts the courts must give effect to the intention of the parties.
We hold that in an action upon a contract for the payment of so many dollars in gold, the plaintiff has a right to demand the gold in specie, and in the absence of such demand, his measure of damages will ■ be the value of the gold in legal tender treasury notes at the time said gold should have been paid under the contract.
Let the judgment be reversed and the cause be remanded for a new trial.